# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO JESUS ROBLES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:14-cv-00285-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

　　　　Plaintiff Ernesto Jesus Robles, by his attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act").  The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.

　　　　The sole issue presented is whether the Administrative Law Judge ("ALJ") erred in determining Plaintiff's residual functional capacity since Plaintiff's severe impairments preclude his performing the jobs on which the ALJ relied in concluding that work existed that Plaintiff could perform.  Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

I. **Procedural History**

On August 17, 2010, Plaintiff filed separate applications for disability insurance benefits and supplemental security income. In both applications, Plaintiff alleged disability beginning January 30, 2009. The Commissioner initially denied the claims on December 9, 2010, and upon reconsideration, on February 2, 2011. On April 15, 2011, Plaintiff filed a timely request for a hearing.

Plaintiff appeared and testified at a hearing on December 6, 2012. Jose Chaparro, an impartial vocational expert, also appeared and testified.

On December 21, 2012, Administrative Law Judge Sharon L. Madsen denied Plaintiff's application. The Appeals Council denied review on January 10, 2014. On February 28, 2014, Plaintiff filed a complaint seeking this Court's review.

II. **Factual Background**

Plaintiff (born February 14, 1965) worked various jobs requiring heavy labor until he was laid off in July 2008. Despite applying for less physically demanding positions, he had been unable to find work.

Plaintiff's physical complaints included lower back pain and weakness, carpal tunnel syndrome, numbness in his arms, inability to lift heavy objects over his head, hernia, abdominal cramping, and rectal bleeding. Due to financial limitations, however, Plaintiff had not received medical treatment until January 30, 2009, when he was treated at Community Medical Center after experiencing back pain, sweating, and blood in his stool. The clinic physician diagnosed fever, stool incontinence due to an anal fistula, and ventral hernia before sending Plaintiff to the emergency room for an evaluation of his stool incontinence and to rule out infection. Notes on a February 6, 2006 follow-up examination indicated a diagnosis of irritable bowel syndrome and that Plaintiff was morbidly obese (69 inches tall; 304 pounds).

Performing a consultative examination, neurologist Michael Froehler, M.D., diagnosed lumbago and possible carpal tunnel syndrome. His examination reported high blood pressure. Dr. Froehler opined that Plaintiff had "no physical impairments or exertional limitations."

///

On May 26, 2009, consulting physician Sadda V. Reddy, M.D., completed a physical residual functional capacity assessment. Dr. Reddy opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could sit, stand, or walk for about six hours each in an eight-hour workday; and had unlimited ability to push and pull. Plaintiff could frequently climb ramps and stairs, balance, kneel, and crawl, and occasionally climb ladders, ropes, or scaffolds, stoop, and crouch.

Dr. Reddy summarized:

> Although [consulting examiner] stated that no functional limitations are needed, considering morbid obesity, history of ventral hernia and poorly controlled hypertension and also history of low back pain, a medium RFC with postural limitations is appropriate. Also needs access to bath room facilities at work place in view of history of anal fistula and irritable bowel syndrome. Mild [carpal tunnel syndrome] with no significant objective findings and no record of treatment does not warrant any functional limitations.

AR348.

On October 22, 2010, consulting internist Rustom Damania, M.D., evaluated Plaintiff. Plaintiff complaints included obesity, right wrist pain, chronic low back pain, weakness, hypertension, pressure in the suprapubic area, and alcohol dependency. Dr. Damania opined that Plaintiff should be able to lift 50 pounds occasionally and 25 pounds frequently. He could stand, sit, and walk without limitation, and required no assistive device. He had no postural or manipulative limitations, nor visual or communicative impairments.

Following Dr. Damania's evaluation, Dr. Reddy opined that Plaintiff's limitations were not severe.

Following a fall, Plaintiff's cervical spine was x-rayed at Elm Community Health Center. Radiologist James Cusator, M.D., observed no fracture but noted moderate degenerative changes in Plaintiff's mid- to low-level spine.

///

///

On June 18, 2012, consulting internist Steven Stoltz examined Plaintiff, diagnosing obesity, bilateral wrist pain, possible obstructive sleep apnea, and hypertension. Dr. Stoltz opined that Plaintiff had no limitations attributable to medical disorders.

Dr. Stoltz completed a medical source statement of ability to do work-related activities (physical). He opined that Plaintiff could occasionally lift and carry 20 pounds and continuously lift and carry ten pounds; sit, stand, or walk for two hours at a time without interruption; sit eight hours in an eight-hour workday; stand six hours in an eight-hour workday; walk four hours in an eight hour work day; continuously reach, handle, finger, feel, push, pull, operate foot controls, climb, balance, stoop, kneel, crouch, and crawl. Plaintiff had no environmental limitations.

On June 1, 2012, Plaintiff was treated at the Community Medical Center's clinic. He reported recent dizziness and light-headedness. Although he had been diagnosed with high blood pressure in 2010, he had not taken the prescribed medication. He reported alcohol use and having experienced black-outs, tremor, waking up drinking, but no seizures. The clinic physician diagnosed asymptomatic, but uncontrolled, high blood pressure; wrist pain, which was likely carpal tunnel syndrome; and alcohol abuse. An EMG study revealed mild-to-moderate neuropathy across both wrists suggestive of mild-to-moderate carpal tunnel syndrome with no coexisting evidence of myopathy or radiculopathy. On August 31, 2012, Loveneet Singh, M.D., referred Plaintiff for carpal tunnel release surgery.

**Vocational expert testimony.** Vocational expert Jose Chaparro testified that seven jobs qualified as past relevant work: chain off-bearer (DOT No. 381.686-018, heavy, unskilled, SVP 2); commercial or institutional cleaner (DOT No. 381.687-014, heavy (medium as performed), unskilled, SVP 2); construction worker I (DOT No. 869.664-014, heavy, semi-skilled, SVP 4); construction worker 2 (DOT No. 869.687-026, heavy, unskilled, SVP 2); fence erector (DOT No. 869.684-022, heavy, skilled, SVP 5); irrigation system installer (DOT No. 851.383-010, medium,

///

4

skilled, SVP 5);machine feeder (DOT No. 699.686-010, medium, unskilled, SVP 2).  Very few of the skills associated with these jobs was transferable.

For the first hypothetical question, the ALJ directed Chaparro to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry 50 pounds occasionally, 25 pounds frequently, and could sit, stand, or walk six hours of an eight-hour work day.  Chaparro opined that the hypothetical person could perform the jobs of machine feeder and irrigation system installer as described but not as Plaintiff actually performed them.  Conversely, the hypothetical person could work as a commercial or institutional cleaner as Plaintiff actually performed the job but not as the DOT described the job.

For the second hypothetical question, the ALJ directed Chaparro to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry twenty pounds occasionally, ten pounds frequently, and could sit, stand, or walk six hours of an eight-hour work day, with occasional forceful gripping and grasping.  Chaparro opined the hypothetical person could not perform any of Plaintiff's prior jobs. The hypothetical person could work as a fast foods worker (DOT No. 311.472-010, light, unskilled, SVP 2, 221,600 jobs nationally, 23,000 jobs in California); cashier 2 (DOT No. 211.462-010, light, unskilled, SVP 2, 1.7 million jobs nationally, 172,000 jobs in California); or housekeeping cleaner (DOT No. 323.687-014, light, unskilled, SVP 2, 221,600 jobs nationally, 23,000 jobs in California).

For the third hypothetical question, the ALJ directed Chaparro to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry 10 pounds occasionally, 10 pounds frequently, and could sit, stand, or walk two hours of an eight-hour work day, with occasional forceful gripping and grasping.  Chaparro opined that Plaintiff could perform the full range of unskilled sedentary jobs, such as addresser (DOT No. 209.587-010, sedentary, unskilled, SVP 2, 12,400 jobs nationally, 2400 jobs in California); microfilming document preparer ( DOT No. 249.587-018, sedentary, unskilled, SVP 2, 21,800 jobs nationally,

5

2400 jobs in California); or any of the 14 DOT titles in the class of jobs including inspectors, testers, sorters, samplers, and weighers. All fourteen job titles could be described as bench testing or bench assembling (SVP 2), and as a group totaled 8300 jobs nationally and 900-950 jobs in California.

For the fourth hypothetical question, the ALJ directed Chaparro to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry 15 pounds occasionally, 5 pounds frequently, and could sit, stand, or walk two hours of an eight-hour work day, with less than occasional gripping, grasping, fingering, and feeling. According to Chaparro, the fourth hypothetical person could not perform any of Plaintiff's prior work nor any other work.

For the fifth hypothetical question, Plaintiff's attorney asked Mr. Chaparro to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry 50 pounds occasionally, 25 pounds frequently, and could sit, stand, or walk six hours of an eight-hour work day, but would require four additional unscheduled 30-minute breaks in each workday. Chaparro opined that the fifth hypothetical person could not perform any of Plaintiff's prior work nor any other work.

## III. Discussion

### A. Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

///

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 30, 2009. His severe impairments were carpal tunnel syndrome, cervical degenerative disc disease, and obesity. The ALJ specifically found Plaintiff's hypertension not to be severe. None of these impairments or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). Plaintiff was able to lift and carry 20 pounds occasionally and ten pounds frequently, and to sit, stand, and/or walk six to eight hours in an eight-hour day, but was limited to occasional forceful gripping and grasping. Although Plaintiff was unable to perform any past relevant work, jobs that Plaintiff could perform existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled.

///

///

### B. Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

### C. Forceful Gripping and Grasping

Plaintiff contends that because the positions identified as those that could be performed by the second hypothetical individual required constant or frequent handling, and because the ALJ found that Plaintiff was limited to occasional forceful gripping and grasping, the agency decision must be reversed. The Commissioner argues that Plaintiff's limitation to occasional forceful gripping and grasping is not tantamount to a limitation on handling or on gripping and grasping in general. In light of prevailing precedent, the Court agrees with the Commissioner.

To conclude that a claimant has the residual functional capacity to perform any other work at step five of the analysis, the ALJ must identify jobs existing in significant numbers in the national

8

economy that the claimant can perform. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). To do so, an ALJ may rely on the testimony of a vocational expert to assess the claimant's limitations and identify existing jobs within the claimant's residual functional capacity. SSR 83-12; *Johnson*, 60 F.3d at 1435; *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). In reaching his opinion, a vocational expert may use the DOT, a reliable source of job information. 20 C.F.R. § 416.966(d)(1).

An ALJ may not rely on a vocational expert's testimony regarding the requirements of an exemplary job without asking the expert whether his testimony conflicts with the DOT and if so, the reasons for the conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The court derived its holding from SSR 00-4p, which requires the ALJ to identify and provide an explanation for any conflict between the vocational expert's testimony and the information set forth in the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with information supplied by the DOT. When there is an apparent conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination of decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The DOT is generally the preferable source of information about how a job is performed. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). If the ALJ elects to accept vocational expert testimony that conflicts with the DOT, the record must set forth persuasive evidence supporting the deviation. *Id.* at 846. An ALJ errs when he fails to ask whether the expert testimony is consistent with the DOT and to obtain a reasonable explanation for the apparent conflict. *Gilmour v. Colvin*, 2014 WL 3749458 at *6 (E.D. Cal. July 29, 2014) (No. 1:13-cv-00553-BAM). An ALJ's failure to inquire whether the vocational expert's testimony is consistent with the DOT may be harmless, however, (1) if there is no conflict between the testimony and the DOT or (2) if the vocational expert

provided sufficient support for his opinion to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n. 19.

Plaintiff contends that the three examples of light work that the vocational expert opined Plaintiff could perform, fast foods worker (DOT No. 311.472-010), cashier 2 (DOT No. 211.462-010), and housekeeping cleaner (DOT No. 323.687-014), all require constant or frequent handling. *See* DICOT 209.587-010, 1991WL671797; DICOT 311.472-010, 1991 WL 672682; DICOT 323.687-014, 1991WL672783. But in arguing that a conflict exists, Plaintiff misstates the ALJ's limitation to "occasional forceful gripping and grasping" as simply "occasional gripping and grasping," and equates "occasional forceful gripping and grasping" with the need for frequent *handling* in the three exemplary positions.

Plaintiff's argument relies on the definition of handling set forth in SSR 85-15 at *7 (emphasis added): "seizing, holding, *grasping*, turning or otherwise working primarily with the whole hand or hands," SSR 85-15 at *7, as well as that set forth in the *Revised Handbook for Analyzing Jobs*, which describes handling as "seizing, holding, *grasping*, turning, or otherwise working with hand or hands." The Revised Handbook for Analyzing Jobs (U.S. Dept. of Labor 1991). According to Plaintiff, the ALJ erred in failing to question the vocational expert about the inconsistency between the jobs' requirement of frequent handling and the limitation of Plaintiff's residual functional capacity to occasional forceful gripping and grasping.

Plaintiff does not refer to definitions of forceful gripping and grasping in the DOT, likely because the DOT does not include this restriction for any of the three exemplary jobs. *See* DICOT 209.587-010, 1991WL671797; DICOT 311.472-010, 1991 WL 672682; DICOT 323.687-014, 1991WL672783. If the DOT does not equate handling to forceful gripping and grasping, no contradiction existed to require the ALJ to ask the vocational expert about the apparent conflict. *See Bauslaugh v. Astrue*, 2010 WL 1875800 at *5 (C.D. Cal. May 11, 2010) (No. ED CV 09-1853-MLG) (concluding that claimant restricted from forceful gripping and grasping failed to show

conflict with the DOT since vocational expert identified jobs that did not specifically require forceful gripping or grasping).

Federal courts in the Ninth Circuit and elsewhere have generally declined to equate handling with forceful gripping and grasping.[1] "The act of grasping requires a firm hold or grip. Handling can mean simply touching or using the hands. It is improper to conflate the two terms." *Czajka v. Astrue*, 2010 WL 3293350 at *4 (C.D. Cal. Aug. 18, 2010) (SA CV 09-00194-MAN). "[N]either handling nor fingering require *forceful* gripping or grasping." *Suarez v. Astrue*, 2012 WL 4848732 at *4 (C.D. Cal. Oct. 11, 2012) (No. ED CV 11-1940-SP). "Frequent handling is not the same as 'forceful' handling." *Equihua v. Astrue*, 2011 WL 321993 at *6 (C.D. Cal. Jan. 28, 2011) (No. ED CV 10-0122-JEM). *See also Bingaman v. Commissioner of Social Security*, 186 Fed.Appx. 642, 646 (6th Cir. 2006) (distinguishing fine or gross manipulation and general handling from forceful gripping)*; King v. Astrue*, 2011 WL 1158247 at *3 (D.Me. March 25, 2011) (No. 2:10-cv-235-DBH) ("[Claimant] cites no authority defining inability to grip forcefully in a manner that is inconsistent with the concept of handling"); *Dixon v. Astrue*, 2008 WL 3984594 at * 11 (N.D. Cal. Aug. 27, 2008) (No. C-07-03370 JCS) (claimant was capable using her non-dominant hand for "frequent but not constant handling and fingering, and only occasional forceful gripping and grasping").

> Although "handling" and "grasping" are similar words, the word "grasping" implies a degree of force that does not attach to the word "handling." Moreover, the words "forceful" and "repetitive" modify "grasping," and an individual may easily be capable of "frequent handling" even if she is restricted from "repetitive forceful grasping." The vocational expert's testimony was therefore consistent with the DOT.
>
> *Augustine v. Astrue*, 2012 WL 2700507 at * 10 (E.D. N.Y. July 6, 2012) (No. 11 Civ. 3886 (BMC)) (*internal citations omitted*).

///

///

---

[1] The Court finds *Peterson-Keisler v. Colvin*, 2013 WL 5424843 at *8 (E.D. Cal. Sept. 27, 2013) (No. 1:12-cv-01050-BAM), which is frequently cited as a contrary holding, to be distinguishable on its facts.

11

In *Equihua*, 2011 WL 321993 at *5, the court held that conflating a job requirement of frequent handling with an RFC restriction on forceful gripping, grasping, and twisting was without merit.  This Court agrees.

### III.     Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.


IT IS SO ORDERED.

Dated:   **December 31, 2014**                     **/s/ Sandra M. Snyder**
                                                              UNITED STATES MAGISTRATE JUDGE